### THE ALDBOROUGH.

(District Court, D. Maryland. December 4, 1900.)

SHIPPING—INJURY TO STEVEDORE—SHIP'S LIABILITY.

Stevedores took charge of the discharge of a vessel, and, while replacing the hatches during a rain, reversed the after crossbeam, because of which the fore and afters did not fit, and they were obliged to drive in the after center fore and after, showing that the forward beam had a bend in it, which as it was put in was bent aft, where, if it had been rightly put in, it would have been bent forward. When the hatches were again taken off, and the crossbeam pulled out with a steam winch, the recoil let down an adjoining section of the hatch on which libelant, a stevedore, was standing, precipitating him into the hold, causing his injuries. The framework of the hatch had been in the same condition for years, and no change was made after the accident. *Held*, that the fact that the crossbeam was bent was not such a defect in the ship as would render it liable for the accident, it being proved that such crossbeams acquired deflection, and that they are marked to be put in as constructed, so that such deflection can be taken up by the proper length and adjustment of the fore and afters, and that if the crossbeam had not been reversed the accident would not have happened.

In Admiralty.,

Convers & Kirlin, Geo. Whitelock, and Geo. Whitefield Betts, Jr., for claimant.

Francis C. Adler, John Q. Lewis, and Foster & Foster, for libelant.

MORRIS, District Judge (orally). This is a libel to recover for serious injuries suffered by the libelant, who was a stevedore employed in discharging the steamship Aldborough, in the port of Philadelphia. He was standing on the middle section of the covering of hatch No. 2, assisting in removing the hatch covers, when the after

section of the middle fore and aft beam was pulled out by the steam winch, and the center section of the middle fore and aft beam, together with the covers upon which libelant stood, fell into the hold, and he was precipitated with them, and received most' serious permanent injuries.

The stevedores had been working the hatch discharging cargo when rain commenced, and they were ordered by the boss stevedore to stop work, and put the hatch covers on. A while afterwards, the rain ceasing, they were directed to remove the hatch covers, and resume work, and it was while libelant was engaged in removing the hatch covers that the accident happened.

I bring to the consideration of this particular case the experience derived from hearing several cases of a very similar character which have been tried before me. As the foundation of suits of this kind, there must be fairly established the failure by the shipowner to perform some duty which he owes to the stevedores employed in discharging his ship. In this case the fault relied upon is an alleged defect in one or more of the fore and aft beams supporting the hatch covers of this large hatch opening, 25 by 15 feet. This hatch covering was constructed of two heavy iron crossbeams, with wooden fore and aft beams resting upon them, upon which the covers, in 24 pieces, were placed. It is obvious that if any part of this framework intended to support the hatch covers was improperly made, or was allowed to fall into a condition inadequate to carry the ordinary weight customarily placed upon it, it was a fault on the part of the shipowners. To have such a structure on the ship and the stevedores using it is a fault on the part of the shipowners, for which they are responsible in damages if the defect results in injury; so that the whole test in this case is whether that fault has been established.

The evidence shows quite clearly that this hatch, and its contrivances for supporting the hatch covers, had been in use a long time before the accident, and the evidence is convincing that it has been used without change since the accident, and that it has answered the purposes for which it was constructed without accident except when the libelant was hurt. Undoubtedly these fore and aft beams, from long usage, might get bruised and somewhat worn at the corners and edges; but when we consider the size of the center fore and afters, which were 11 inches deep and 7 inches broad, it must be apparent that it would take more than any ordinary use to so wear off the ends that, having originally had a bearing from an inch and a quarter to an inch and three-quarters at each end on the iron crossbeams, they would drop down with only the weight of one man standing on them.

This volume of the Revised Statutes lying before me illustrates the depth of those beams. This book is 11 inches long. Take a beam 7 feet long, and that has a depth of 11 inches and a width of 7 inches,—that is, two or three times the width of this book,—and it is apparent that to wear it off so it would drop down, although it had originally a bearing surface of an inch and a quarter on an iron rest at each end, is so improbable that there ought to be exceedingly

convincing proof to lead the court to find it to be a fact. Further, it would seem, with a beam of that kind, with that amount of surface at the ends, that, in order to drop down, it would have to be something more than merely short enough to fail to rest upon the ledge at one end, because as it fell, if the other end held, there would be a tendency to grip against some portion of the surface of the end. So I think it is obvious that there would have to be a very considerable shortness to let such a beam as that fall directly down, as it did in this case.

Of course, there must be an explanation of what did actually happen, and which caused this unfortunate man such deplorable results. I think that comes out, to some extent at least, in the testimony for the libelant. It is directly testified to by the witnesses for the steamship, but it comes out, to some extent, in the testimony for the libelant. I noted it particularly in the evidence of Thomas, one of the stevedores, and a man who seemed, from his testimony, as far as I could judge, to be one of the most observant of the witnesses. I am not disposed to say any of the libelant's witnesses were unintelligent. I think they testified as might be expected of men who had only their opportunity of observing, and who had some of the bias such men would naturally have in favor of one of their number, who has been rendered so entirely helpless by this accident. Thomas said that in replacing the hatch covers when it came on to rain they had to wedge in the aft fore and after because the crossbeam was sprung and bent. If it was a fault on the part of the ship that the crossbeam was bent, and that caused the accident, the ship might be liable; but it has been testified that crossbeams acquire, from use in the ship, a certain amount of deflection, and that they are all marked to be put in as constructed, so that the deflection shall be a constant quantity, which may be provided for and taken up by the proper length and adjustment of the fore and after. That seems to be established by the evidence, and it seems reasonable that the crossbeams should acquire, with the workings of the ship, a slight deflection from a straight course or shape, and that is allowed for and is corrected by the length of the proper fore and afters which are used in these particular places, where they belong, and for which they are marked. I think it is also established by the evidence of the claimants for the ship that this particular crossbeam was put in by the stevedores end for end,—it was reversed,—although there were marks upon it which indicated which was the proper end to put to port, and which was the proper end to put to starboard. That being so, and the fact being that the fore and after, in order to get it into place, had to be wedged in,—driven down with force to get it into place,—accounts for the accident; that is, that when they drew the fore and after out with such power as was necessary, and with a steam winch, which can lift many, many tons, so that it would require but a small portion of its power to pull out a fore and after even if it had stuck,—when they applied the steam, and pulled out this fore and after which had been driven in with force, the crossbeam sprung into its former somewhat bent position. It must have been some such thing as that which happened in order to account for

the fact that in the next section the fore and after immediately dropped, and let this man fall into the hold.

I cannot say that the construction of the crossbeams with the deflection in them, or the allowing them to remain aboard after this deflection has manifested itself, is a fault. It is stated to be common usage, and it is provided for—any difficulty arising from it is provided for—by the fore and afters being made to fit, so that if the beam is put in in the way it is marked and intended to be put in, and if the fore and afters are used as they should be, no difficulty results from that deflection.

It is most lamentable, and counsel have my concurrence in their comments upon the sad fact, that there are a great number of these serious accidents to men engaged in discharging and loading ships. It is a fact that the whole method of discharging ships has been very much altered of recent times. Formerly directing the discharging of a ship was the personal duty of the officers of the vessel. They employed the stevedores, and it was the ship's business, and it was overlooked by the mates. The chances of damage and injury were not so great, because the hatches were not so large, because the work was not performed by steam power, as it is now, and the care taken was greater, because it was overlooked by the mates of the ships. Now, however, as soon as a ship comes to port, the vessel is turned over to the stevedores, who take charge of her to discharge the cargo. They furnish men, and they furnish nearly all the appliances, and they have charge of the work. The vessel supplies nothing but the steam necessary to run the winches, and, perhaps, some portion of the tackle. The stevedores supply the winchmen. The whole vessel, for the purpose of that business, is turned over to the stevedores, and they go to work, in separate gangs, at the different hatches.

It has seemed manifest to me in hearing these cases that the separate gangs of stevedores are not under competent supervision. They really need, for their own safety, some careful, experienced foreman or boss stevedore, in charge of each gang, to overlook and protect them. They are enterprising, active, strong men, eager to do their duty, and they take upon themselves great risks of accident, often without being aware of it. This very matter of going upon these large-sized hatches, to take off the covers, is, of itself, not a matter of special danger, and I cannot see how the hatch covers are to be taken off with expedition unless there is one man on the center fore and after assisting, and I do not think that is reckless on the part of the stevedore to do that. But it has been shown, by repeated accidents, that to have a man to remain there when the steam power is applied to a fore and after, and in some cases to one of the crossbeams, to pull it out, is negligence on the part of the man who remains there on the adjoining section of the hatch cover during that part of the operation. Here is a large framework, made to be taken apart and taken out. Each part is made to support the other when at rest, and the pulling away, with an amount of violence which cannot be estimated at the time, of one portion, would naturally disturb the rest of it, and, experience shows, may lead to the falling in of the hatch covers, and the injury of the man remaining there.

Several of the more careful and experienced stevedores, who have appeared in this court, have said that it was so dangerous that they never allow any man to remain on the hatch covers while the steam winch is pulling out any one of the fore and afters, or any one of the crossbeams; that they warn them, and command them to come off during that time. It seems to me that is only a reasonable precaution. I cannot find that it is a duty that devolves on those in charge of the ship. The ship's officers are not directing, under the modern method of discharging a vessel,—they are not directing or overseeing the stevedores. The stevedores have their own bosses. They are working together in one common employment, to discharge the vessel.

I find in this case that this accident occurred from two causes, which worked together. One was that the stevedores themselves, when they replaced the hatches in order to protect the cargo from the rain, put in this after crossbeam reversed. The consequence was that the fore and afters did not fit, and they were obliged to drive the aft center fore and after with sufficient force to drive it into its place, showing that the forward beam had a bend in it, which, as it was put in, was a bend aft, whereas, if it had been rightly put in, it would have had a bend forward. And when the rain was over, and they were about to uncover the hatches, they pulled out this fore and after with an amount of power that is not easy to estimate, as it was pulled out with steam, and then the crossbeam sprung out, and let down the adjoining fore and after of the next section, upon which libelant was standing; and this unfortunate man during that time remained where he should not have remained,—standing on the hatch,—and in that way met with the accident. The best consideration I can give to the case leads me to the conclusion that the libel must be dismissed.